**In the United States District Court
for the District of Kansas**

---

Case No. 20-cv-01180-TC-JPO

---

KANSAS MOTORCYCLE WORKS USA, LLC,

*Plaintiff*

v.

HAL DEREK MCCLOUD, ET AL.,

*Defendants*

---

**MEMORANDUM AND ORDER**

    Plaintiff Kansas Motorcycle Works USA, LLC, has asserted several constitutional claims against Defendants Bryant Evans, Casey Schrag, and the Board of County Commissioners of Rice County, Kansas. Doc. 25. Defendants have moved to dismiss, Docs. 37–38, and Plaintiff has requested oral argument. Doc. 52. For the following reasons, Defendants' motion to dismiss is granted in part and denied in part, and Plaintiff's motion for oral argument is denied.

**I**

    Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(6). They assert that the Second Amended Complaint, Doc. 25, fails to state a claim on which relief may be granted.

**A**

    Defendants move to dismiss for failure to state a claim. Rule 12(b)(6). To survive a motion to dismiss, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

1

The Tenth Circuit has summarized two "working principles" that underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, the Court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Kan. Penn Gaming*, 656 F.3d at 1214. Second, the Court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from merely conceivable to actually plausible. *Id.* at 678–80. The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**B**

**1.** This case stems from a civil property dispute between Plaintiff Kansas Motorcycle Works USA, LLC, and Hal McCloud, a Rice County Commissioner conducting business in his private capacity. Doc. 25 at ¶¶ 1–2, 12. Based on a verbal agreement with McCloud, Kansas Motorcycle invested money into improving certain tooling equipment. The agreement contemplated Kansas Motorcycle and McCloud sharing the equipment, which they sent to a third-party business in Gove County, Formation Plastics, for additional work. Doc. 25 at ¶¶ 11–16.

Evidently a dispute arose between Kansas Motorcycle and McCloud over the ownership or disposition of the jointly owned equipment. *See* Doc. 25 at ¶¶ 11–17. The complaint is silent as to the

source or specifics of the dispute, but eventually, McCloud convinced Rice County Sheriff's Deputy Casey Schrag to assist. Schrag traveled in his Rice County Sheriff's Office patrol vehicle to Formation Plastics, located in Gove County, and arrived at the business wearing his Sheriff's Office uniform. *Id.* at ¶ 18. Schrag took possession of the equipment, returned with the equipment to Rice County, and then delivered it to McCloud despite Kansas Motorcycle's ownership interests. *Id.* at ¶¶ 20–23. Schrag did not seek or obtain a warrant for the equipment's seizure. *Id.* at ¶ 28. Although the complaint's exhibits suggest McCloud had reported the equipment as stolen, Docs. 25-4–25-5, no criminal charges were filed, and Kansas Motorcycle alleges there was never any criminal investigation. *Id.* at 25.

At all relevant times, Defendant Bryant Evans was the Rice County Sheriff. Doc. 25 at ¶ 3. The complaint broadly alleges that Evans "conspired with" McCloud and Schrag "to seize the Equipment and bring it to McCloud's warehouse" and that he "expressly approved and permitted the unlawful seizure." Doc. 25 at ¶¶ 17 & 24. Kansas Motorcycle also alleges that the Board of County Commissioners and Evans failed to implement any policies "prohibiting their employees from seizing property without a warrant" and failed to require employees to adhere to the Constitution. Doc. 25 at ¶¶ 30–31.

**2.** Kansas Motorcycle originally sued McCloud, Evans, Schrag, and the Board of County Commissioners. Doc. 25. Subsequently, the parties stipulated to McCloud's dismissal with prejudice, rendering moot his motion to dismiss. Docs. 53–54.

Seeking redress under 42 U.S.C. § 1983 against the remaining Defendants, Kansas Motorcycle alleges that they "violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution." Doc. 25 at ¶¶ 32–35.[1] Defendants seek dismissal of all claims. Doc. 37.

## II

The motion to dismiss is granted in part and denied in part. Specifically, the complaint plausibly alleges that Schrag violated Kansas Motorcycle's clearly established constitutional rights. But Kansas

---

[1] Kansas Motorcycle has since expressly abandoned its Fifth Amendment claim. Doc. 43 at 1. Thus, Defendants' motion to dismiss is granted as to any Fifth Amendment claim.

3

Motorcycle has failed to allege facts showing Evans or the Board were engaged in a conspiracy, officially ratified Schrag's conduct, or were deliberately indifferent. Thus, the claims against Evans and the Board of County Commissioners are dismissed.

### A

Kansas Motorcycle alleges that Schrag—and all Defendants—violated its constitutional rights, and it asserts several claims under 42 U.S.C. § 1983. That statute provides that "[e]very person who, under color of [state law,] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." *Id.* It creates no substantive rights in and of itself, but merely provides a mechanism for enforcing a right conferred by the Constitution or federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Thus, to state a viable Section 1983 claim, a plaintiff must establish that (i) a person (ii) acting under color of state law (iii) caused him or her to be (iv) deprived of a right secured by the Constitution or laws of the United States. *See Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006).

Schrag makes two arguments in favor of his motion to dismiss. First, he alleges that his conduct did not constitute a violation of Kansas Motorcycle's constitutional rights. Second, he argues that, even if it did, he is entitled to qualified immunity because those rights were not clearly established.

**1.** Contrary to Schrag's arguments, the complaint asserts a plausible violation of Kansas Motorcycle's constitutional rights.[2] Specifically, Kansas Motorcycle alleges that, despite the ongoing dispute with McCloud over the equipment, Schrag used his power as a law enforcement officer to seize personal property in favor of McCloud without any legal process. This alleged conduct gives rise to viable Fourth and

---

[2] Business entities, including LLCs, enjoy Fourth and Fourteenth Amendment protections. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 353 (1977); *Wheeling Steel Corp. v. Glander*, 337 U.S. 562, 574 (1949); *see also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 195 n.6 (5th Cir. 2009) (applying *G.M. Leasing* in LLC context).

Fourteenth Amendment claims. But the conspiracy claim fails as a matter of law.

**a.** The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has made clear that personal property seizures are "per se unreasonable within the meaning of the Fourth Amendment unless . . . accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983). Still, the Supreme Court has recognized a few limited exceptions to the warrant requirement—circumstances in which a warrantless seizure is still constitutionally reasonable. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006); *Brower v. Inyo Cty.*, 489 U.S. 593, 599 (1989).

But Schrag has not argued that any exception to the warrant requirement applies. Instead, he argues that no seizure occurred. Specifically, he contends that Kansas Motorcycle was not in possession of the equipment when it was taken and that the party that *was* in possession, Formation Plastics, relinquished the equipment "voluntarily" without the use of "force or coercion" from Schrag. Doc. 38 at 14–15. And, even if there was a seizure, he contends that Kansas Motorcycle lacks standing to complain. Neither argument is viable.

**Seizure.** A seizure occurs, as a matter of law, any time a person is deprived "of dominion over his or her person or property." *Horton v. California*, 496 U.S. 128, 133 (1990). The question is broader than simple possession and dispossession: "[A] seizure occurs when there is some *meaningful interference* with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 & n. 5 (1984) (emphasis added) ("While the concept of a 'seizure' of property is not much discussed in our cases, this definition follows from our oft-repeated definition of the 'seizure' of a person within the meaning of the Fourth Amendment—meaningful interference, however brief, with an individual's freedom of movement."); *see also Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992).

And force is no prerequisite. In the context of person seizures, the Supreme Court has clarified that an officer can effect a seizure either through application of force *or* by show of authority. In the latter situation, the seizure occurs when its subject "complies with the demand" or, stated differently, when there is "submission to the assertion of

5

authority." *See Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). A seizure can occur even without a full-blown search or suspicion of criminality. *Winters v. Bd. of Cty. Comm'rs*, 4 F.3d 848, 853 (10th Cir. 1993) (finding officers "seized" pawnshop jewelry within meaning of Fourth Amendment despite lack of search); *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004) ("The Fourth Amendment's protection applies in the civil context and is not confined to seizures that are the outcomes of a search.") (internal citations and quotation marks omitted).

The complaint plausibly alleges that Schrag seized Kansas Motorcycle's property in violation of the Fourth Amendment. It alleges that Kansas Motorcycle, "[c]onsistent with the verbal agreement between [itself] and McCloud," delivered the equipment to Formation Plastics for unspecified work. Doc. 25 at ¶¶ 12–16. Contrary to that alleged possessory interest, and without a warrant authorizing the seizure, Schrag arrived in his Rice County patrol vehicle and full uniform and demanded that Formation Plastics hand over the equipment. *Id.* at ¶¶ 18–22. He then delivered it to McCloud. *Id.* at 23. That conduct violates the Fourth Amendment. *See Winters*, 4 F.3d at 853; *cf. Place*, 462 U.S. at 705 ("The intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in its nature and extent. The seizure may be made after the owner has relinquished control of the property to a third party or, as here, from the immediate custody and control of the owner.").[3]

**Standing.** That Kansas Motorcycle voluntarily left the equipment in Formation Plastics' possession for repairs or improvements does not undermine its standing to challenge the seizure. *Contra* Doc. 38 at 15. Essentially, Schrag argues that Kansas Motorcycle cannot complain about his entry into Formation Plastics' facility because it was a private business that Kansas Motorcycle did not own. *Id.*; Doc. 51 at 9. That might matter if Kansas Motorcycle were complaining about the validity of a search at Formation Plastics, but it is not. Rather, Kansas

---

[3] Defendants imply Schrag did not know the equipment was the subject of a dispute between Kansas Motorcycle and McCloud. Doc. 38 at 9, 16–17. But Schrag's knowledge of the dispute is irrelevant to whether a seizure occurred, as there is no blanket exception to the warrant requirement for situations where a reported theft is "undisputed." *Cf., e.g, Illinois v. McArthur*, 531 U.S. 326, 330–31 (2001) (describing recognized exceptions to the warrant requirement).

Motorcycle contends that Schrag *seized* equipment that Kansas Motorcycle owned, without a warrant or other lawful process, and gave it to another individual claiming a competing interest in the property.

Defendants argue that two unpublished cases support their argument: *Smith v. Walsh*, 48 F.3d 1233, 1995 WL 91165 (10th Cir. Feb. 23, 1995), and *United States v. Wilcox*, No. 2:13-CR-717, 2015 WL 2365563 (D. Utah May 15, 2015). Doc. 38 at 15–16. But in *Walsh*, the Tenth Circuit rejected a Fourth Amendment challenge to the *entry* into another's land, to effect an otherwise valid seizure, because the complaining party had no interest in the land. 1995 WL 91165, at *2. That case is inapposite because Kansas Motorcycle does not challenge the lawfulness of Schrag's entry and there are no facts suggesting that Schrag's warrantless seizure was valid. So is *Wilcox*, where the court found only that the defendant lacked standing to challenge the search of areas in which he did not have "any possessory or property interest." 2015 WL 2365563, at *5.

Moreover, the Fourth Amendment "protects property as well as privacy," hence the separate prohibitions against searches *and* seizures. *Soldal*, 506 U.S. at 62–68. On that reasoning, the Supreme Court has opined that "an officer who happens to come across an individual's property in a public area could seize it only if Fourth Amendment standards are satisfied—for example, if the items are evidence of a crime or contraband." *Id.* at 68. Consequently, property owners may have standing to challenge a seizure even where they would have no standing to challenge a search so long as they have "a legitimate possessory *or* ownership interest" in the property. *See United States v. Shareef*, 100 F.3d 1491, 1499–1500 (10th Cir. 1996) (emphasis added); *cf. Steeber v. United States*, 198 F.2d 615, 616 (10th Cir. 1952). Kansas Motorcycle's possessory interest in the equipment is sufficient to provide standing to object to its unlawful seizure.

**b.** The Fourteenth Amendment claim against Schrag arises from his conduct after the warrantless seizure: Schrag allegedly placed the equipment into McCloud's possession without providing any notice, opportunity for hearing, or other process to Kansas Motorcycle. Doc. 43 at 8. Defendants do not dispute that the facts, if true, satisfy the basic elements of a procedural due process claim.[4] Instead, Defendants

---

[4] Although the complaint broadly alleges "violat[ions of] the Fourth, Fifth, and Fourteenth Amendments" without further specification, neither its fact

assert that the availability of postdeprivation, state-law remedies precludes relief. Doc. 38 at 15–16, 23.

It is true that the availability of postdeprivation process can, depending on the nature of the deprivation, foreclose a due process claim. As the Tenth Circuit noted in *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989), "[t]he intentional deprivation of property is not a fourteenth amendment violation if adequate state post-deprivation remedies are available." *See also Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (observing *Hudson v. Palmer*, 468 U.S. 517 (1984), and *Parratt v. Taylor*, 451 U.S. 527 (1981), were special applications of the due process balancing test in *Matthews v. Eldridge*, 424 U.S. 319 (1976)). In short, postdeprivation remedies may suffice where the deprivations were random and unauthorized actions for which no predeprivation process *could* have been provided.

But, as in *Zinermon*, a law enforcement officer's seizure of private property is not one of those circumstances. After all, in "situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." 494 U.S. at 132. That process was necessary here because the deprivation was not unpredictable: Schrag, wearing his law enforcement uniform, drove his patrol vehicle from Rice County to Gove County, took the equipment, and returned it to McCloud without a full investigation and before the county attorney could weigh in on any criminal charges. *See* Doc. 25 at ¶¶ 25–27.

In fact, predeprivation process was available under Kansas law as in *Zinermon*. At minimum, Schrag could and should have sought a warrant particularly describing the property to be seized and the limits of any seizure. *See* Part II.A.1.a. *supra*. And after the seizure, nothing prevented Schrag from investigating ownership, notifying Kansas Motorcycle that law enforcement had possession of the property and was investigating, or seeking judicial intervention before disposing of the equipment to one of the purported owners. *Cf.*, *e.g.*, K.S.A. § 22-2512(a) ("Property seized under a search warrant or validly seized without a warrant shall be safely kept by the officer seizing the same unless otherwise directed by the magistrate… so long as necessary for the

---

allegations nor Kansas Motorcycle's briefed arguments relate to a *substantive* due process claim.

purpose of being produced as evidence…."); K.S.A. § 22-2512(c) (creating procedures for disposing of former evidence, distinguishing between stolen property with a known rightful owner and other "property … the ownership of which is unknown," and instructing resort to the courts for any property not falling into one of these categories); K.S.A. § 60-1701 (authorizing Kansas courts to issue declaratory relief). Because predeprivation process was available, it was required. *Zinermon*, 494 U.S. at 132.

Neither would it have been "unduly burdensome" or ineffective for the State to supply this predeprivation process. *Zinermon*, 494 U.S. at 132–35. Schrag's conduct was not the type of "random and unauthorized" behavior against which predeprivation process offers no protection and with which *Parratt* and *Hudson* dealt. *See id.* at 135. Instead, the "State delegated to [him] the power and authority to effect the very deprivation complained of here," as well as "the concomitant duty to initiate the procedural safeguards set up by state law to guard against" unlawful disposition of property. *Zinermon*, 494 U.S. at 138. Officers such as Schrag are expressly deputized to keep the peace, *see* K.S.A. §§ 19-813, 19-805(a), and are commanded to be in uniform while on duty, K.S.A. § 19-822. Those duties include conducting legally valid searches, *see* K.S.A. § 22-2205, but do not include aiding one side in private property disputes that should be resolved in a courtroom. *See Marcus v. McCollum*, 394 F.3d 813, 818–19 (10th Cir. 2004); *cf. Soldal*, 506 U.S. at 58–62 (holding that officers' presence at the removal of a trailer home, without a court order for eviction, implicated—and violated—Fourth Amendment rights). Thus, the availability of postdeprivation process remains immaterial.

The Tenth Circuit reached the same unremarkable conclusion five years before *Zinermon*, in *Lavicky v. Burnett*, 758 F.2d 468 (10th Cir. 1985). There, Lavicky was convicted of stealing vehicle parts and placing them on his own truck. *Id.* at 471–72. Officers subsequently allowed the victims to recover from Lavicky's truck any parts they wished, outside Lavicky's presence and without oversight. *Id.* at 472. The victims stripped the truck, Lavicky sued, and the officers argued that postdeprivation remedies prevented a due process claim. *Id.* Rejecting that argument, the Tenth Circuit pointed to *Hudson*'s pronouncement that "[t]he controlling inquiry is solely whether the State is in a position to provide for predeprivation process" and held that "the defendants' conduct in disposing of the pickup could not be characterized as the sort of random or unauthorized action that may be

9

remedied by postdeprivation hearings." *Lavicky*, 758 F.2d at 473. It "was not impractical" for state actors to determine ownership of allegedly stolen property before its disposition. Nor was the officers' conduct—"planned and authorized" as it was—"the sort of action for which postdeprivation process will suffice." *Id.*; *see also Coleman v. Turpen*, 697 F.2d 1341, 1344 (10th Cir. 1982) ("It might have been impractical for the State to give Mr. Coleman a hearing before it seized the money during his arrest. However, the deprivation Mr. Coleman challenges is . . . its retention by the State until his execution. A hearing to determine the propriety of this retention is not impractical."); *Wolfenbarger v. Williams*, 774 F.2d 358, 363–64 (10th Cir. 1982) (analyzing Oklahoma state law but observing that "[o]nce the police have confiscated and secured allegedly stolen property, the 'necessity for quick action by the State'" contemplated in *Parratt* "is no longer present") (internal citation omitted).

**c.** Schrag is entitled, however, to judgment as a matter of law on Kansas Motorcycle's conspiracy claim. There is no freestanding conspiracy claim under Section 1983. *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). Instead, conspiracy in the context of Section 1983 is a means by which multiple actors can be liable for the same underlying constitutional violation. *Id.* Here, Schrag is alleged to have directly participated in all of the activity giving rise to Kansas Motorcycle's Fourth and Fourteenth Amendment claims, and the presence or absence of a conspiracy with others would not alter either the viability of those claims or their potential remedies.

**2.** Schrag next argues that he is entitled to qualified immunity because the law he allegedly violated was not clearly established. As set forth below, Kansas Motorcycle claims that Schrag's behavior violated two clearly established constitutional rights of which any reasonable law enforcement officer should have known.

**a.** Suits against government actors allow those wronged by government misconduct a method of redress. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). Although such suits permit the vindication of a plaintiff's federal rights, nonmeritorious suits exact a high cost from both society and government officials. *See id.* These suits may unduly interfere with the discharge of official duties, due to the constant threat of civil litigation. *See Harlow,* 457 U.S. at 814. "[T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most

10

resolute, or the most irresponsible, in the unflinching discharge of their duties." *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1277 (10th Cir. 1998) (internal citations and quotation marks omitted). Thus, the Supreme Court has recognized that qualified immunity should be liberally applied. *See White v. Pauly*, 137 S. Ct. 548, 551–52 (2017).

To balance these competing interests, government officials performing discretionary duties, like Schrag here, are immune from suit so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Whether an official is protected by qualified immunity turns on the objective reasonableness of the official's actions, considering the laws clearly established at the time the official acted. *See Messerschmidt v. Millender*, 565 U.S. 546 (2012).

There is a presumption in favor of qualified immunity. *See Hidahl v. Gilpin Cty. Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991). Once invoked, qualified immunity will apply unless a plaintiff has demonstrated both that the defendant's actions violated the plaintiff's federal rights and that the right was clearly established at the time the conduct occurred. *See Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *accord Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018). Courts may address either step first. *Pearson*, 555 U.S. at 236; *see Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010).

Discerning whether the relevant legal rule was clearly established is a narrowly tailored and context-specific exercise. As the Court in *Anderson* recognized, nearly every right—if viewed at a sufficiently high level of generality—is clearly established. *See* 483 U.S. at 639. To protect the institutional interests that qualified immunity serves, however, more is required. *See White*, 137 S. Ct. at 552–53 (granting petition and vacating Tenth Circuit decision because it construed the legal rule at too high of a level); *accord Pickens v. Aldaba*, 577 U.S. 972 (2015). Accordingly, the precise contours of the right must have been so clear that every reasonable official in that circumstance would have understood what he or she was doing violated that right, leaving no debate as to the lawfulness of the conduct. *See Reichle v. Howards*, 566 U.S. 658, 664 (2012); *al-Kidd*, 563 U.S. at 740; *see also Rivas-Villegas v. Cortesluna*, No. 20-1539, 2021 WL 4822662 (U.S. Oct. 18, 2021) (slip op.) (granting certiorari and summarily reversing Ninth Circuit's denial of qualified immunity where the precedent relied upon presented "materially distinguishable" facts such that it "did not give fair notice" to

11

defendant). When it is debatable whether a violation has occurred, the law cannot, by definition, be clearly established. *See Reichle*, 566 U.S. at 669–70 (quoting *Wilson v. Layne*, 526 U.S. 603, 618 (1999)); *City of Tahlequah v. Bond*, No. 20-1668, 2021 WL 4822664 (U.S. Oct. 18, 2021) (slip op.).

**b.** At the time of the alleged deprivation, Supreme Court and Tenth Circuit precedent had clearly established that a law enforcement officer may not seize private property without a warrant or give it to another without any process. As a result, Kansas Motorcycle has overcome Schrag's invocation of qualified immunity.

The warrantless seizure of property, absent exigent circumstances or another exception, offends the most basic precepts of Fourth Amendment doctrine. In *Place*, for example, the Court stated the obvious: seizure of personal property is "per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant." 462 U.S. at 701. Schrag did exactly what the Fourth Amendment forbids.

The Tenth Circuit has applied that rule, in a scenario nearly identical to this one, in *Winters.*, 4 F.3d at 853. There, a law enforcement officer learned that reportedly stolen property had been pawned at a certain shop. He entered that shop, asked to see the property, and then seized it without a warrant. *Id.* at 850–51. The Tenth Circuit rejected the officer's claims of applicable exceptions to the warrant requirement and held that "when a law enforcement officer intends to seize a particular piece of criminal evidence from the premises of a pawnshop … the officer must obtain a warrant" to avoid a Fourth Amendment violation. *Id.* at 854–55. Here, Schrag has not even claimed an exception to the warrant requirement that would allow him to seize reportedly stolen property from a third-party business. And the law requiring him to obtain a warrant or identify an applicable exception was clearly established at the time.

So too with Kansas Motorcycle's Fourteenth Amendment claims. The Supreme Court has held that predeprivation process is required "before taking property" any time that a "State feasibly can provide" such process, "regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Zinermon*, 494 U.S. at 132. Granted, the facts of *Zinermon* involved civil confinement of an individual without process. But the Supreme Court made this straightforward observation in the specific context of *Parratt*, *Hudson*, and an

express discussion of "deprivations of property." *Id.* The due process command has been clear for decades: unless the deprivation is random and unauthorized, predeprivation process is required.

*Zinermon* alone dooms Schrag's plea for qualified immunity. But there is more—the Tenth Circuit has, on at least three occasions, applied this settled principle in situations sufficiently analogous that the obligations imposed by the Fourteenth Amendment should have been obvious. That is sufficient. *See*, *e.g.*, *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018) ("The rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'") (internal citations omitted); *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (requiring "an on-point Supreme Court or published Tenth Circuit decision" or "the clearly established weight of authority from other courts"); *but see City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (recognizing it is an open question whether circuit-level precedent "may constitute clearly established law for purposes of qualified immunity").

In *Lavicky v. Burnett*, 758 F.2d 468 (10th Cir. 1985), the Tenth Circuit held that it violated the Fourteenth Amendment's procedural due process clause to allow victims of car-part theft to recover stolen parts from Lavicky's vehicle without a hearing or oversight. Significantly, Lavicky had already been convicted of the theft at the time this occurred. Here, in contrast, there was no criminal investigation (much less a conviction), and the ownership of the equipment was a contested matter that Schrag's conduct effectively resolved without any procedural protections.

The same black-letter law was applied in *Marcus v. McCollum*, 394 F.3d 813 (10th Cir. 2004), a case that evaluated whether an officer's assistance in private repossession might violate the Fourteenth Amendment. There, the court stated quite plainly: "To repeat, the overarching lesson of the case law is that officers may act to diffuse a volatile situation, but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance." *Id.* at 818–19 (citing cases in support of that rule from other circuits). Schrag's acts were more egregious because he did not merely provide cover for a private individual taking the disputed property; he instead used his badge of authority to take the property himself and deliver it to one of the entities claiming ownership.

Finally, in *Lawrence v. Reed*, 406 F.3d 1224 (10th Cir. 2005), the Tenth Circuit recognized just how thoroughly it is established that law enforcement may not seize and dispose of private property without notice. There, the officer did not challenge the district court's denial of qualified immunity for his disposal of a citizen's derelict vehicles without predeprivation process. Instead, the officer claimed that, although his conduct violated clearly established law, he should nonetheless be excused from liability because he relied on an ordinance authorizing his conduct and because he consulted the city's attorney, who failed to raise any objections. *Id.* at 1230. The Tenth Circuit rejected that argument because to dispose of a vehicle without a hearing was so "patently violative of fundamental constitutional principles" that a reasonable officer would have known that the ordinance was unlawful: "Our decisions, and those of other circuits, have made abundantly clear that when the state deprives an individual of property—for example, by impounding an individual's vehicle—it must provide the individual with notice and a hearing." *Id.* at 1233. While officers are not expected to know what types of hearing will suffice, they are charged with the knowledge that the absence of any hearing is unconstitutional. *Id.* Here, again, no hearing was provided either before the seizure or before Schrag gave the equipment to McCloud.

These controlling authorities applied settled law. Those applications were not novel or, in the situation confronting Schrag, difficult to apply. As a result, Kansas Motorcycle has overcome Schrag's invocation of qualified immunity.

**B**

Kansas Motorcycle alleges that Sheriff Evans, in his individual capacity, is responsible for Schrag's seizure and disposition of the equipment because he conspired with Schrag. Doc. 25 at ¶¶ 17, 19, 24–25. These allegations are conclusory and therefore insufficient to survive a motion to dismiss.

Blanket assertions of a conspiracy, without more, cannot support a Section 1983 claim. In *Hunt v. Bennett*, 17 F.3d 1263 (10th Cir. 1944), for example, the Tenth Circuit rejected a conspiracy allegation because "Hunt fail[ed] to allege specific facts showing agreement and concerted action among" the allegedly conspiring defendants. At 1266. So too in *Durre*, where the Tenth Circuit ruled that "[c]onclusory allegations of conspiracy [were] insufficient to state a valid § 1983 claim." 869 F.2d at 545. And in *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir.

1983), the Tenth Circuit stated that "[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials … in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." Despite those teachings, conclusory allegations of a conspiracy between Schrag, Evans, and the Board are all that Kansas Motorcycle's complaint offers. Doc. 25 at ¶ 33. That will not do. *See generally Iqbal*, 556 U.S. at 677; *Trujillo v. Williams*, 465 F.3d 1210, 1227–28 (10th Cir. 2006); *Tonkovich v. Kan. Bd. Regents*, 159 F.3d 504, 518 (1998).

### C

Kansas Motorcycle also alleges that Evans, in his official capacity, and the Board are subject to liability. Doc. 25 at ¶¶ 30–32.[5] A municipal entity, or an officer in his or her official capacity, may be held liable under 42 U.S.C. § 1983, but not by way of respondeat superior. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988)). Instead, a plaintiff seeking to impose liability on a local government must establish that the harm-causing conduct was undertaken pursuant to an official municipal policy or custom. *See Monell*, 436 U.S. at 691; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).

Municipal entities—including counties and their sheriffs—may not be liable under Section 1983 unless the entity itself supported a violation of federal rights through a custom or policy. *See Pembaur*, 475 U.S. at 479–80. The Tenth Circuit has "recognized as policies meeting this standard" those that "aris[e] from a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees." *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1239–40 (10th Cir. 2020) (internal citations and quotation marks omitted).

---

[5] The claims against Evans and the Board are duplicative. *Cf. Kentucky v. Graham*, 473 U.S. 159, 169 (1984) (observing that a judgment against a government official in his or her official capacity "imposes liability on the entity that he represents").

Kansas Motorcycle attempts to impose municipal liability in two ways. In one, it alleges Evans (or the Board) ratified Schrag's conduct. Doc. 25 at ¶ 24; Doc. 43 at 9–10. In the other, it alleges Evans and the Board failed to train their employees. Doc. 25 at ¶ 30 (alleging defendants "failed to promulgate or implement any policy" to prevent violations); Doc. 43 at 9–10 (clarifying Kansas Motorcycle is pursuing a failure-to-train theory). Both efforts fail.

**1.** A municipal entity becomes liable by way of ratification only "if a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a subordinate's decision and the basis for it." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009). The thrust of this rule is that—by accepting the subordinate's decision and reasoning—the final policymaker has "render[ed] a final decision chargeable to the municipality." *Butcher v. McAlester*, 956 F.2d 973, 977 n.2 (10th Cir. 1992).

To support its ratification theory, the complaint offers only a single statement that "Defendant Evans expressly approved and permitted the unlawful seizure of the Equipment …." Doc. 25 at ¶ 24. That allegation is conclusory; there are neither facts to support the claim nor anything to suggest it is possible, much less plausible. That type of bald accusation will not suffice, as *Iqbal* made plain a decade ago. "[M]ere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim …. Thus, in ruling on a motion to dismiss, a court should *disregard all conclusory statements* of the law and consider whether the remaining *specific factual allegations*, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)) (emphasis added). Ignoring the conclusory allegation leaves nothing in the complaint to suggest that anyone ratified Schrag's conduct.

Kansas Motorcycle's attempt to add additional facts fails as a matter of law. *Contra* Doc. 43 at 9. For one thing, a party may not amend its complaint by way of arguments in a brief. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995); D. Kan. R. 15.1 (describing the process to properly amend). For another, the allegations—even if they could be considered—fail to plausibly allege any ratification: suggesting that "Evans copied and pasted Schrag's written explanation for his conduct into a police report and eventually forwarded it on to the County Attorney," Doc. 43 at 10, does not constitute ratification. Merely

reporting on factual events cannot show that a subordinate's conduct—or its basis—has been approved. *Cf. Praprotnik*, 485 U.S. 112, 130 (1988) ("Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy," and neither is "the mere failure to investigate the basis of a subordinate's discretionary decisions."); *Kibbe v. City of Springfield*, 777 F.2d 801, 809 n.1 (1st Cir. 1985) (holding failure to discipline a subordinate, without more, does not amount to ratification for purposes of municipal-policy liability); *Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) ("The only evidence of ratification Medina identifies is that Ortiz accepted the officer's use of force report, refused to turn over evidence until the lawsuit was filed, and defends the deputies' actions in this case. None of these allegations show that Ortiz approved of the use of excessive force or the denial of medical care."); *Johnson v. Town of Vail*, No. 08-cv-464, 2009 WL 1394263, at *9–10 (D. Colo. May 19, 2009) (finding that supervisor's review of "primary and supplemental incident reports" was, alone, insufficient to support conclusion that "they approved of the decision and the basis for it, in order to find ratification").

**2.** Seeking to impose liability for failing to train an officer is a difficult task. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (recognizing "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train"). Two conditions—mental state and causation—must be met before failure-to-train liability may be imposed. *Schneider v. Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). As to mental state, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees will come into contact. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To constitute deliberate indifference, the risks of failing to train must be so immediately apparent, in light of actual or constructive notice that the failure is substantially certain to cause constitutional harm, that the final policymaker's refusal to address the shortcoming is the functional equivalent of a conscious decision to violate the Constitution. *See Connick*, 563 U.S. at 61–62; *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). And as to causation, the policy of not undertaking particular training must be the "moving force" that "actually caused" the deprivation at issue. *See Canton*, 489 U.S. at 391; *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 412 (1996) (noting there must be so strong a connection between the inadequate training and

the constitutional deprivation that a court can say "this officer was highly likely to inflict the particular injury suffered").

Even accepting Kansas Motorcycle's claim that the Board and Evans had a policy of failing to train deputies that they may not seize property without a warrant or any other process, Doc. 25 at ¶¶ 30, 31, there are no facts pled that suggest deliberate indifference. As a result, the failure-to-train theory fails as a matter of law. *See Canton*, 489 U.S. at 388.

## III

For the reasons set forth above, Defendants' motion to dismiss, Doc. 37, is GRANTED in part and DENIED in part. And Plaintiff's motion for oral argument, Doc. 52, is DENIED.

It is so ordered.

Date:  October 27, 2021         s/Toby Crouse
                                                                Toby Crouse
                                                                United States District Judge